UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JUANITA MINTON-CRUMITY &
ROBERT L. ALEXANDER, SR.,

    Plaintiffs,

v.                                                                      Case No.  4:20-cv-69-MW/MJF

NANCY LOU TYSON & MICHELLE
HODGES,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Plaintiffs' First Amended Complaint. For the reasons stated below, the undersigned recommends that this action be dismissed for lack of subject matter jurisdiction.[1]

**I.    Background**

Plaintiffs commenced this suit against Defendants Nancy Lou Tyson and Michelle Hodges by filing a 51-page complaint. (Doc. 1). Plaintiffs initially asserted at least seven causes of action against Defendants relating to the death of Dr. Albert Alexander. (*Id.* at 1). Plaintiffs also asserted that the Connecticut State Appellate

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

court violated their Fourteenth Amendment Due Process rights because the court "dismissed or completely overlooked key salient facts" relating to Plaintiffs' appeal involving Connecticut probate proceedings. (*Id.* at 24). For relief, Plaintiffs sought (1) an unspecified amount of damages, (2) that this court reopen the Connecticut state court probate proceeding, and (3) that this court "review and overturn the [state court's] ruling with instructions on remand to probate court." (*Id.* at 26-27).

Plaintiffs' complaint violated Rule 8 of the Federal Rules of Civil Procedure and a basis for subject matter jurisdiction was not readily apparent. (Doc. 3). Accordingly, the undersigned directed Plaintiffs to amend their complaint to demonstrate the existence of subject matter jurisdiction—if it in fact existed—and to comply with Rule 8. (*Id.*).

On June 4, 2020, Plaintiffs filed an amended complaint. (Doc. 7). They assert that this court has both federal question and diversity of citizenship jurisdiction. They allege that this court has federal question jurisdiction because Defendants crossed state lines to commit criminal offenses. (*Id.* at 4). In support of diversity jurisdiction, they allege an amount in controversy of approximately $4.5 million. (*Id.* at 8). As to citizenship, they claim to be citizens of Florida. They allege that Defendant Tyson is a citizen of Florida, and they contend that Defendant Hodges is a citizen of Georgia. (*Id.* at 4, 5).

In their amended complaint—now, the operative pleading in this action—Plaintiffs raised only two claims. Count One is titled "WRONGFUL DEATH – MURDER STAGED AS SUICIDE." (*Id.* at 10). To support this claim, Plaintiffs allege the following facts

> On 6/11/06, Dr. Albert was murdered execution style in the sanctity of his bedroom, by Def Tyson and others. Et Al. The shooter crossed state lines.
>
> On 8/2/06, Plaintiff Alexander petitioned the Probate Court to be appointed Administrator; Def Tyson filed a week later to be the Administratrix and without an evidentiary hearing or trial, was approved 3/14/07 on the false basis that she was his wife and no Will existed. Both Marriage and Will were/are contested. His entire lifelong estate and assets were seized by Def Tyson.
>
> She engaged in systematic attempts to manipulate the Probate and State Courts of CT with impunity to prevent a trial from occurring in order to conceal the facts and evidence that could affirm that Def Tyson caused his untimely death and faked the marriage, as part of Def Tyson conspiracy to seize the decedent's estate and assets. They refused to respond to plaintiff's interrogatories, demands for discovery and made a mockery of **DUE PROCESS.**
>
> On 7/24/06 Def Tyson perpetrated fraud and deception upon the probate court when she filed the deed for PL Crumity's home, which belonged to decedent Dr. Alexander; after murdering him, and before the probate court held its first hearing on the decedent's estate on 10/13/06 to decide the status of the Marriage and Will, which Tyson conveniently destroyed before the court decided to appoint her as the Administratrix of his estate without discovery or trial.

(*Id.* at 10-11) (typographical and grammatical errors in original). For relief, Plaintiffs seek to be named the administrator of Albert Alexander's estate and an award of damages.

Plaintiffs do not indicate what cause of action they seek to raise in Count Two. In its entirety, Count Two states:

> Defs have become a "mobile crime machine". They have subsequently moved their criminal activity from CT to North FL, where upon Tyson is domicile in Tallahassee. On or about 2/16/06, decedent Dr. Alexander just months before his untimely death, refinanced Pl Crumity home for $99,000.00. Def Tyson traveled to Monticello, 7/24/06 to record the deed without knowledge of the CT Probate Court, which she wrongfully recorded in her name before the Probate Court was ever convened or properly notified at the first Probate hearing on 10/13/06.
>
> Moreover, Defs Tyson and Hodges, her partner in crime, moved their criminal activity to Fl. In an elaborate scheme of a promise to finance by holding the loan on the property, after receiving the $10,000.00 on 1/2717 cash deposit, they refused to execute the agreement, but recorded the deed in a newly created LLC for Hodges. Their actions were a classic "bait and switch". The Probate Court made its Ruling to appoint Def Tyson as Administratrix without ever knowing that Def Tyson had recorded the deed in her name before the hearing. The decedent, Probate Court and Pl Crumity were deceived and defrauded.

(*Id.* at 11) (typographical and grammatical errors in original). For relief, they seek monetary damages.

## II.   Discussion

The undersigned instructed Plaintiffs to amend their complaint to state a basis for this court to exercise subject matter jurisdiction, if such jurisdiction existed. Plaintiffs' amended complaint does not state facts indicating that this court enjoys subject matter jurisdiction.

Federal courts are "courts of limited jurisdiction," and "they possess only the power authorized by Congress or the Constitution." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Congress may "give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922). The validity of a federal court's order depends upon that court having subject-matter jurisdiction. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Absent a grant of subject-matter jurisdiction from Congress, a court "is powerless to act." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Wernick v. Mathews*, 524 F.2d 543, 545 (5th Cir. 1975).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). "[A] court *sua sponte* can raise a jurisdictional defect at any time, leading to dismissal of the relevant action." *Taliaferro v. United States*, 677 F. App'x 536, 537 (11th Cir. 2017) (quoting *Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")).

A. **Diversity of Citizenship Jurisdiction**

Section 1332(a)(1) of Title 28 of the United States Code authorizes federal courts to exercise subject matter jurisdiction over cases involving parties whose citizenship is diverse when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Courts are authorized to exercise such diversity jurisdiction only when there is *complete* diversity of citizenship among the parties. *Owen Equip. & Recreation Co. v. Kroger*, 437 U.S. 365, 373 (1978); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). In order to have complete diversity, "every plaintiff must be diverse from every defendant." *Triggs*, 154 F.3d at 1287. "That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Recreation Co.*, 437 U.S. at 373. "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same state as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp.*, 545 U.S. at 553. A court cannot exercise jurisdiction based on diversity of citizenship "when any plaintiff is a citizen of the same State as any defendant." *Owen Equip. & Recreation Co.*, 437 U.S. at 374.

"It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately

challenged, or if inquiry be made by the court of its own motion, to support the allegation." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim."). Thus, the "burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction . . . ." *Ray v. Bird & Son & Asset Realization Co., Inc.*, 519 F.2d 1081, 1082 (5th Cir. 1975).

Plaintiffs have failed to sufficiently allege facts indicating that this court enjoys diversity of citizenship jurisdiction. In their amended complaint, Plaintiffs included facts indicating that the parties do not have complete diversity of citizenship. (Doc. 7 at 4, 5). Specifically, they allege that both Plaintiffs are citizens of Florida and that Defendant Tyson is a citizen of Florida. (*Id.* at 2, 4, 5). Because Defendant Tyson is a citizen of the same state as both Plaintiffs, this court lacks diversity of citizenship jurisdiction to adjudicate this action.

  B. <u>**Federal Question Jurisdiction**</u>

Article III of the United States Constitution empowers Congress to give federal courts jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1. The Supreme Court has broadly construed the "arising under" language of Article III to extend "to all cases

in which a federal question is 'an ingredient' of the action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (quoting *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 823 (1824)). The main purpose of federal-question jurisdiction is "the preservation of the constitution and laws of the United States, so far as they can be preserved by judicial authority . . . ." *Ames v. Kansas*, 111 U.S. 449, 470-71 (1884) (quoting *Cohens v. Virginia*, 19 U.S. 264, 391 (1821)); *see also Kansas v. Nebraska*, 574 U.S. 445, 456 n.5 (2015) (recognizing federal judicial authority to give effect to and remedy violations of federal law).

In bestowing general federal-question jurisdiction on federal courts, Congress authorized United States district courts to exercise jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether it enjoys federal-question jurisdiction over an action, a court first must look at the subject matter of the "well-pleaded complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Calif.*, 463 U.S. 1, 9 (1983); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (observing that "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon" federal law). In doing so, courts look to the substance, not merely the labels, of the plaintiff's claims as contained in his complaint. *See Mosher v. City of Phoenix*, 287 U.S. 29, 30 (1932). Federal-question jurisdiction exists "when a federal question

is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

A civil action "arises under" federal law at least when a federal statute creates the cause of action. *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *see Mims v. Arow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012); *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992). That is, "federal jurisdiction attaches when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. ___, 136 S. Ct. 1562, 1569 (2016); *Mims*, 565 U.S. at 378 (observing that "when federal law creates the cause of action and furnishes the substantive rules of decision, the claim arises under federal law, and the district courts possess federal-question jurisdiction under § 1331").

"But even when 'a claim finds its origins' in state law, there is 'a special and small category of cases in which arising under jurisdiction still lies.'" *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 136 S. Ct. at 1569-70 (quoting *Gunn*, 568 U.S. at 258). In determining whether federal question jurisdiction over a state law claim exists, a court must consider whether a "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Only when these

four requirements are met, is jurisdiction proper because "there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313-14).

Plaintiffs assert that this court enjoys federal question jurisdiction because the Defendants have "crossed State lines to affect their criminal deeds including bank fraud and the murder of Dr. Alexander." (Doc. 7 at 11). Plaintiffs do not identify any Constitutional right or federal law that creates any cause of action for such conduct.[2] Indeed, the only cause of action that they have identified in their complaint is wrongful death, which generally is a state law claim. Plaintiffs do not assert that the resolution of their wrongful death claim—or their claim in Count Two—necessarily requires resolution of a substantial federal question. *Compare Welch v. Atmore Comty. Hosp.*, 704 F. App'x 813, 817 (11th Cir. 2017) (holding that district court did not err in declining to find federal question jurisdiction when the plaintiff made a conclusory statement that the wrongful death claim was brought before the district court under the Controlled Substance Act), *with Thomas v. Admin. Comm. Of Wal-Mart Stores, Inc.*, 210 F. Supp. 2d 1296, 1300-01 (holding that a wrongful death suit may be sufficiently connected to ERISA and its preemptive effect that it presents a

---

[2] Plaintiffs generally do not have standing to initiate a lawsuit to enforce criminal statutes. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a cognizable interest in the prosecution or non-prosecution of another.").

federal question). Accordingly, Plaintiffs also have failed to establish that this court enjoys federal question jurisdiction over this action.

### C. *Rooker-Feldman* Doctrine

Finally, to the extent Plaintiffs are challenging the Connecticut Probate Court's decision to appoint Defendant Tyson as the administratrix of a decedent's estate, their action would be barred by the *Rooker-Feldman* doctrine.

Congress "has given only the United States Supreme Court the ability to hear an appeal from a state court decision." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018). Specifically, the relevant provision of the United States Code provides that: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ." 28 U.S.C. § 1257(a). This statute provides such appellate jurisdiction only to the Supreme Court, and not to district courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("§ 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court."); *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).

As the Supreme Court stated in *District of Columbia Court of Appeals v. Feldman*, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." 460 U.S. 462, 482 (1983). The decision in *District of Columbia Court of Appeals v. Feldman* is one part of the "*Rooker-*

*Feldman*" doctrine that recognizes that federal district courts cannot exercise "appellate jurisdiction over final state-court judgments." *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009); *Casale*, 558 F.3d at 1260. In other words, this doctrine applies to "cases brought by state court-losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. This doctrine applies even to cases which are not explicitly "styled as an appeal of a state court judgment." *May v. Morgan Cty., Ga.*, 878 F.3d 1001, 1008 (11th Cir. 2017).

Prior to commencing this action, Plaintiff Alexander petitioned the Connecticut Probate Court to be appointed administrator of his brother's estate. (Doc. 7 at 6). The Connecticut Probate Court appointed Defendant Tyson as the administratrix, however. (*Id.* at 10 ¶ 2). Plaintiff appealed the Probate Court's decision to the Connecticut Superior Court, which rendered a judgment of nonsuit against Alexander after he failed to appear for trial. *See Alexander v. Tyson*, No. 3:11cv710 (SRU), 2013 WL 1798896, at *1 (D. Conn. Apr. 29, 2013); (Doc. 1 at pp. 22-24). This decision was affirmed by the Connecticut Court of Appeals. *Alexander v. Tyson*, 122 Conn. App. 493 (2010). The Connecticut Supreme Court denied review. *Alexander v. Tyson*, 298 Conn. 928 (2010). Plaintiffs request that this court appoint Plaintiff Alexander as the administrator of Albert Alexander's estate

necessarily would require this court to run headlong into the *Rooker-Feldman* bar insofar as Plaintiffs are essentially asking this court to review the state court's final decision and modify it. The District Court lacks subject matter jurisdiction to entertain this action to the extent it seeks appointment of Alexander as the administrator of the estate, because it is inextricably intertwined with the state probate court's final decision.

### III. Conclusion

Because it is clear from the Plaintiffs' amended complaint that this court does not enjoy subject matter jurisdiction over this action, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** without prejudice.

2. The clerk of the court be directed to terminate all pending motions and close the case file.

At Panama City Beach, Florida this <u>8th</u> day of June, 2020.

                                        /s/ *Michael J. Frank*
                                        **Michael J. Frank**
                                        **United States Magistrate Judge**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.